IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JONATHAN SPEIGHT,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )   Civil Action No. 3:20cv189–HEH
                                 )
LYFT, INC., *et al.*,            )
                                 )
            Defendants.          )

# MEMORANDUM OPINION
**(Granting Motions to Compel Arbitration)**

Plaintiff Jonathan Speight (*pro se* "Plaintiff") filed this lawsuit in the Richmond City Circuit Court on February 24, 2020 (ECF No. 1-1), and Defendant Lyft, Inc. ("Lyft") subsequently removed the suit to this Court on March 19, 2020 (ECF No. 1). This matter is before the Court on two Motions to Compel Arbitration. Lyft filed a Motion to Compel Arbitration (ECF No. 13) and Defendants John Zimmer, Logan Green, Stephen Taylor, Cabell Rosanelli, and Todd Morgan ("individual Defendants," collectively "Defendants") filed a near-identical Motion to Compel Arbitration (ECF No. 26).

The parties have filed memoranda supporting their respective positions, and the matter is ripe for this Court's review. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. *See* E.D. Va. Local

Civ. R. 7(J). For the reasons that follow, the Court will grant Defendants' Motions to Compel Arbitration and will stay the matter pending arbitration.[1]

It is well established that district courts must liberally construe a *pro se* litigant's complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Courts, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleadings to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the United States Court of Appeals for the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

A "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). A court,

---

[1] Plaintiff filed a Motion for Defense Deposit and Investment of Funds in the Court Registry Investment System (ECF No. 20) and three separate motions for default judgment as to individual Defendants Todd Morgan (ECF No. 28); Todd Morgan, Logan Green, and John Zimmer (ECF No. 34); and Cabell Rosanelli (ECF No. 39). The Court need not address these motions at this juncture as the Court will grant Defendants' Motions to Compel Arbitration and will stay this matter pending arbitration.

2

however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Construing Plaintiff's Amended Complaint liberally, Plaintiff brings claims for breach of contract and for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). (Am. Compl. 10–13, ECF No. 8.) Plaintiff also alleges a conspiracy to interfere with civil rights claim under 42 U.S.C. § 1985, as well as state law claims for negligence and fraud, but these claims are substantively identical to his discrimination and breach of contract claims. (*Id.* at 8–13.) Therefore, the Court will only address whether Plaintiff's Title VII, ADEA, and breach of contract claims are arbitrable.

Broadly, Plaintiff's Title VII and ADEA claims both arise out of allegations that, based on his age, race, and gender, Defendants denied him a marketing position with Lyft, failed to provide him support at marketing events that he facilitated on behalf of Lyft, treated him differently from younger, white employees, excluded him and all men from a "'[f]emale' only driver safety event," failed to pay him as required by his contract, and terminated him improperly. (*Id.* at 1–9.) In support of his breach of contract claim, Plaintiff restates that Defendants discriminated against him and withheld his pay, and adds allegations that he was not terminated in compliance with the terms of his contract and was denied the opportunity to arbitrate or mediate his claims. (*Id.* at 10–13.) Plaintiff states in three places in the Amended Complaint that Lyft "never honored Plaintiff's request for Arbitration or Mediation," but filed multiple briefs opposing

3

Defendants' Motions to Compel Arbitration. (*Id.*) Interpreting Plaintiff's Amended Complaint and filings liberally, the Court will still assess whether Plaintiff's claims are bound by an arbitration clause.

Plaintiff states that he "is a male, African American who worked as a Lyft driver and Local Driver Advisory Council Consultant" ("LDAC" Consultant). (*Id.* at 2.) He applied for a "Marketing Specialist" position with Lyft on March 26, 2019. (*Id.*) Lyft requested a two-minute video on March 27, 2019, as part of the application process for the marketing position. (*Id.* at 3.) Plaintiff argues that a statistical lack of representation of people of color in leadership positions at Lyft's office in Richmond, combined with the video requirement, demonstrate that he was denied the marketing position based upon his age and race. (*Id.* at 3.) The Amended Complaint states that "[a]round [May 22, 2019,] Plaintiff learned that he had not been selected to the Marketing Specialist position and a significantly younger, white female was hired." (*Id.* at 4.)

On May 1, 2019, "Plaintiff was informed that he was selected for a different position in the Local Driver's Advisory Council as a consultant." (*Id.*) Accordingly, he signed a consulting agreement ("the Agreement") on May 2, 2019. (*Id.*) Plaintiff lays out the remainder of his allegations in chronological order as occurring between the execution of the Agreement on May 2, 2019 and his termination around the end of January, 2020.[2] (*Id.* 4–9.) The Agreement is a written agreement, attached to the

---

[2] The Amended Complaint states that Plaintiff was "under review" as of January 29, 2020, and then that he was terminated on February 8, 2019. (*Id.* at 9.) The exact date of Plaintiff's termination is unclear because his alleged termination date predates the signing of the contract.

4

Amended Complaint, that includes an arbitration provision. (*Id.* Ex. E, ECF No. 8-6.) The arbitration provision provides, in relevant part, that:

> [A]ny and all claims, disputes or controversies between [Plaintiff] and [Lyft] arising out of or relating in any way to this Agreement . . . , including any claims arising out of or related in any way to [Plaintiff's] relationship with or Services for [Lyft] and/or its affiliates, shall be submitted to final and binding arbitration to the fullest extent allowed by law. This arbitration obligation shall apply to any and all claims, causes of action, in law or equity of any nature whatsoever, whether arising in contract, tort or statute, between [Plaintiff] and [Lyft] and/or their affiliated entities (including their owners, directors, managers, employees, agents, and officers) . . . .

(*Id.* at 5.) The Agreement further "expressly delegate[s] to the arbitrator the authority to determine the arbitrability of any dispute, including the scope, applicability, validity, and enforceability of this arbitration provision." (*Id.*)

A party may compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, only if the party establishes:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002)). Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved "in favor of arbitration." *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see Adkins*, 303 F.3d at 500 ("Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation."). Whether a

5

dispute is arbitrable is a question of contract interpretation, and courts must give effect to the parties' intentions as expressed in their agreement. *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006). The scope of arbitrable issues is "to be decided by the court, not the arbitrator, '[u]nless the parties clearly and unmistakably provide otherwise.'" *Summer Rain v. Donning Co./Publ'rs, Inc.*, 964 F.2d 1455, 1459 (4th Cir. 1992) (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Both the United States Supreme Court and the Fourth Circuit have construed language demonstrating the parties' intent "to arbitrate any dispute that '*ar[ose] out of or related to*'" a contract "to be broad arbitration clauses capable of an expansive reach." *Am. Recovery Corp. v. Comput. Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (alterations in original).

In deciding whether a dispute is arbitrable, "the court should apply 'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[G]enerally applicable [state] contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see* Va. Code § 8.01-581.01 ("A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.").

The party opposing arbitration bears the burden of proving that the claims are not appropriate for arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). In such an instance, the "court[] should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability . . . is in issue. Where a party contests either or both matters, 'the court' [not the arbitrator] must resolve the disagreement." *Bates v. Lundy Motors, LLC*, No. 3:16cv133–HEH, 2016 WL 6089827, at *4 (E.D. Va. Sept. 30, 2016), *adopted by Bates v. Lundy, LLC*, No. 3:16cv133–HEH, 2016 WL 6089727, at *1 (E.D. Va. Oct. 17, 2016) (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299–300 (2010)).

In this case, Defendants may compel arbitration under the FAA. Plaintiff's claims, as laid out in the Amended Complaint, evince a dispute between Plaintiff and Defendants. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87. The Agreement contains an arbitration provision that covers the relationship, including the dispute laid out in the Amended Complaint, between Plaintiff, Lyft, and the individual Defendants. *See id.* The Agreement describes Plaintiff's duties, in part, as consulting "with Lyft local and HQ team members." (Am. Compl. Ex. E at 7.) Lyft is an internet-based ridesharing company. Lyft, Inc., BLOOMBERG (Jan. 26, 2021, 8:00 AM), https://www.bloomberg.com/profile/company/LYFT:US. Lyft's principal place of business is in San Francisco, California. (Am. Compl. Ex. E at 2.) Considering Lyft's reliance on the internet for its business operations, and the multistate nature of the parties' relationship, the Agreement evidences the relationship of the transaction to

7

interstate commerce. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87. Finally, as previously stated, this Court construes Plaintiff's briefs in opposition to Defendants' Motions to Compel Arbitration as a refusal to arbitrate despite Plaintiff's contradictory statements in the Amended Complaint. *See id.*

Plaintiff states four plausible arguments in opposition to Defendants' Motions to Compel Arbitration: (1) his claims do not fall within the scope of the arbitration provision; (2) Defendants' motions were not timely filed; (3) the Agreement is an unfair and unconscionable contract of adhesion; and (4) Plaintiff is exempt from the FAA under 9 U.S.C. § 1.[3] First, Plaintiff's claims as alleged in the Amended Complaint fall entirely within the time period and scope of the parties' relationship under the Agreement. Furthermore, the arbitration provision contains expansive language binding the parties to arbitrate "any claims arising out of or related in any way to [Plaintiff's] relationship" with Defendants. (Am. Compl. Ex. E at 5.) However, the parties expressly delegated all issues regarding the arbitrability of any dispute and the scope of the arbitration provision to the arbitrator. (*Id.*) Accordingly, the scope of the arbitration clause must be determined by the arbitrator, not the Court. *See Summer Rain*, 964 F.2d at 1459. This Court finds that the arbitration provision in the Agreement requires that Plaintiff's claims

---

[3] Plaintiff filed five briefs under various titles in which he purports to reply to Defendants' Motions to Compel Arbitration. (ECF Nos. 18, 21, 23, 29, 30.) In these filings, Plaintiff raises a wide variety of arguments and issues ranging from general opinions regarding the Black Lives Matter movement to additional support for his claims as alleged in the Amended Complaint. Plaintiff also cites a variety of cases discussing arbitration clauses in the context of the Fair Labor Standards Act ("FLSA"). (ECF No. 29.) As Plaintiff has not filed any claims under the FLSA, consideration of these cases is unnecessary. The Court here only addresses Plaintiff's plausibly relevant and procedurally appropriate arguments.

8

as alleged in the Amended Complaint be submitted to arbitration. The Court also submits to the arbitrator any issues regarding the scope of the arbitration clause or the arbitrability of any pending dispute.

Second, Defendants' motions are timely. Lyft filed its Motion to Compel Arbitration on May 11, 2020 (ECF No. 13), less than twenty-one days after Plaintiff filed his Amended Complaint on April 27, 2020 (ECF No. 8), and in accordance with Federal Rule of Civil Procedure 12(a)(1)(A)(i). Todd Morgan was served with the Amended Complaint on June 4, 2020. (ECF No. 24.) Logan Green and John Zimmer were served with the Amended Complaint on June 8, 2020. (ECF No. 25.) Stephen Taylor and Cabell Rosanelli have not yet been served. Accordingly, the individual Defendants' Motion to Compel Arbitration, filed on June 25, 2020 (ECF No. 26), was filed within twenty-one days of when they were served with the Amended Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

Third, the Agreement is an enforceable contract. The Agreement was formed in Virginia, thus Virginia law governs this Court's analysis of any contract defenses, including that the Agreement is an unfair or unconscionable contract of adhesion. *See Doctor's Assocs., Inc.*, 517 U.S. at 687; *see also* Va. Code § 8.01-581.01. A contract of adhesion is a form contract "prepared by one party" and "to be signed by another party in a weaker position." *PHC-Martinsville, Inc. v. Dennis*, No. CL14-483, 2017 WL 4053898, at *2 n.4 (Va. Sept. 14, 2017) (internal citations omitted). Whether the Agreement is a contract of adhesion is only a factor for this Court to weigh in determining if the Agreement is unconscionable; contracts of adhesion are not per se

9

unconscionable. *See id.* Furthermore, a party "can implicitly waive" a "public policy" unconscionability argument "by ratifying the contract and seeking a recovery on it." *Meuse v. Henry*, 819 S.E.2d 220, 230 n.3 (Va. 2018). Plaintiff alleges breach of contract claims in his Amended Complaint, therefore ratifying the Agreement by seeking recovery on it, while attempting to discredit it in his opposition brief. Finally, Plaintiff simply states that the Agreement "is a 'contract of adhesion' due to unequal bargaining power, unfairness, and unconscionability." (Pl. Br. Opp. 6, ECF No. 29.) Considering the conspicuous lack of evidence or argument before this Court regarding how the Agreement is unconscionable, the Court finds that the Agreement and the enclosed arbitration provision are both enforceable.

Plaintiff lastly argues that he is exempt from the FAA under 9 U.S.C. § 1. He cites, without argument or application to the instant case, a variety of cases discussing the exceptions to the FAA contained in § 1. (*Id.* at 10–12.) Section 1 exempts from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The United States Supreme Court held in *Circuit City v. Adams* that § 1 applies to employment contracts of transportation workers, not to all employment contracts. 532 U.S. 105, 119 (2001). The Court further clarified in *New Prime, Inc. v. Oliveira* that § 1 applies to independent contractors as well as to employees. 139 S. Ct. 532, 540–44 (2019). "However, § 1 of the FAA represents a narrowly targeted exception to a well-established, broad preference in favor of arbitration." *Adkins*, 303 F.3d at 505. Plaintiff here was not conducting "work related to the interstate transportation of goods" under the Agreement as a LDAC

10

Consultant. *Id.* At most, within his broader relationship with Defendants, Plaintiff was involved in local transportation as a rideshare driver, but the Agreement contemplates consulting work unrelated to transport. The Court therefore finds that Plaintiff is not exempted from the FAA.

Defendants ask this Court to dismiss this action pursuant to the binding arbitration provision, or, in the alternative, to stay the proceeding pending arbitration. However, this Court's ability to dismiss an action pursuant to a binding arbitration provision is unsettled. The FAA states that courts "satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. In *Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, the Fourth Circuit stated that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable," but ultimately held that, because at least some of the plaintiff's claims were not arbitrable, dismissal of the complaint in its entirety would not be appropriate. 252 F.3d 707, 709–10, 712 (4th Cir. 2001). *Choice Hotels* is at odds with the Fourth Circuit's earlier opinion, *Hooters of America, Inc. v. Phillips*, where the court did not recognize dismissal as an option for courts interpreting arbitration clauses, but rather stated only that "[w]hen a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration." 173 F.3d 933, 937 (4th Cir. 1999). Courts similarly faced with the Fourth Circuit's ambiguity on this point have erred on the side of staying proceedings pending arbitration. *See, e.g., Blount v. Northrup Grumman Info. Tech. Overseas, Inc.*, No. 1:14cv919, 2014

11

WL 5149704, at *5 (E.D. Va. Oct. 14, 2014); *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, 678 (W.D. Va. 2014). Absent conclusive authority to the contrary, this Court will follow the FAA and will stay proceedings pending the outcome of arbitration.

Based on the foregoing analysis, Defendants' Motions to Compel Arbitration (ECF Nos. 13, 26) will be granted, and this action will be stayed pending the outcome of arbitration. The parties will be required to notify the Court as to the outcome of arbitration within five days following completion of arbitration. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: January 28, 2021
Richmond, Virginia